E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT M. LARA (Cal. Bar No. 296944)
CATHARINE A. RICHMOND (Cal. Bar No. 301184)
Assistant United States Attorneys
Violent and Organized Crime
    312 North Spring Street, 12th Floor
    Los Angeles, California 90012
    Telephone: (213) 894-0427/7162
    Facsimile: (213) 894-0141
    Email:   scott.lara@usdoj.gov
           catharine.richmond@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>         v.<br><br>CYR DINO BANGUGUILAN &<br>MIGUEL BOCARDO,<br><br>      Defendants. | No. SA CR 21-188(B)-2-3<br><br>GOVERNMENT'S TRIAL MEMORANDUM<br><br>Trial Date:  11/14/22<br>Hearing Time: 8:00 a.m.<br>Location:    Courtroom of the<br>                Hon. John W.<br>                Holcomb |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Catharine A. Richmond and Scott M. Lara, hereby files its Trial Memorandum.

//

//

This filing is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: 11/07/22                    Respectfully submitted,

                                   E. MARTIN ESTRADA
                                   United States Attorney

                                   SCOTT M. GARRINGER
                                   Assistant United States Attorney
                                   Chief, Criminal Division

                                   *Catharine Richmond*
                                   _____
                                   CATHARINE A. RICHMOND
                                   SCOTT M. LARA
                                   Assistant United States Attorneys

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                PAGE

**Contents**

TABLE OF AUTHORITIES..............................................iii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    STATUS OF THE CASE...........................................1

II.   STATEMENT OF CHARGES.........................................1

III.  ELEMENTS OF THE OFFENSES.....................................2

IV.   SUMMARY OF FACTS.............................................3

      A.    BANGUGUILAN receives child pornography from Rodriguez,
            responding affirmatively to the files multiple times......4

      B.    BOCARDO enthuses about the child pornography Rodriguez
            sent him.................................................7

V.    LEGAL AND EVIDENTIARY ISSUES.................................9

      A.    Motions *In Limine*......................................9

            1.    The Charged Child Pornography Can Offered And, If
                  Admitted, Published to the Jury.....................9

            2.    BANGUGUILAN and BOCARDO's Chats Can Be Offered......10

            3.    BANGUGUILAN (And BOCARDO's) Statements Can Be
                  Offered............................................10

            4.    Agent Kennedy Can Offer Expert Testimony...........11

      B.    Hearsay.................................................11

            1.    The Government May Introduce Defendant's
                  Statements.........................................11

            2.    The Government May Introduce Statements of
                  Persons in Conversation with the Defendant.........12

            3.    Defendants May Not Introduce Their Own Statements
                  Through Other Witnesses............................12

      C.    Cross-Examination of Defendant..........................13

            1.    Impeachment of Defendant with False Statements......16

      D.    Audio and Video Recordings..............................16

### <u>TABLE OF CONTENTS (CONTINUED)</u>

<u>DESCRIPTION</u>                                                                                           <u>PAGE</u>

    E.   Case Agent's Testimony About the Audio And Video
        Recordings...............................................17

    F.   Business Records and Public Records......................19

    G.   Reciprocal Discovery....................................20

    H.   Jury Nullification......................................21

    I.   Parties' Potential Stipulation to Interstate Nexus......22

    J.   Authentication, Identification, and Chain of Custody.....22

    K.   Character Evidence......................................23

VI.   CONCLUSION..................................................24

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                                                      <u>PAGE</u>

<u>Gallego v. United States</u>,
   276 F.2d 914 (9th Cir. 1960). . . . . . . . . . . . . 22

<u>Hamling v. United States</u>,
   418 U.S. 87 (1974) . . . . . . . . . . . . . . . . . 23

<u>Horning v. District of Columbia</u>,
   254 U.S. 135 (1920) . . . . . . . . . . . . . . . . 21

<u>McGautha v. California</u>,
   402 U.S. 183 (1971) . . . . . . . . . . . . . . . . 15

<u>Michelson v. United States</u>,
   335 U.S. 469 (1948) . . . . . . . . . . . . . . 23, 24

<u>Ohler v. United States</u>,
   529 U.S. 753 (2000) . . . . . . . . . . . . . . . . 15

<u>Reyes v. United States</u>,
   383 F.2d 734 (9th Cir. 1967) . . . . . . . . . . . . 22

<u>Roaers v. United States</u>,
   422 U.S. 35 (1975) . . . . . . . . . . . . . . . . . 21

<u>Taylor v. Illinois</u>,
   484 U.S. 400 (1988) . . . . . . . . . . . . . . . . 20

<u>United States v. Black</u>,
   767 F.2d 1334 (9th Cir. 1985) . . . . . . . . . . . 15

<u>United States v. Blackwood</u>,
   878 F.2d 1200 (9th Cir. 1989) . . . . . . . . . . . 22

<u>United States v. Bright</u>,
   588 F.2d 504 (5th Cir. 1979) . . . . . . . . . . . . 24

<u>United States v. Chu Kong Yin</u>,
   935 F.2d 990 (9th Cir. 1991) . . . . . . . . . . . . 22

<u>United States v. Cuozzo</u>,
   962 F.2d 945 (9th Cir. 1992) . . . . . . . . . . . . 15

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

United States v. De Bright,
    730 F.2d 1255 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . 22

United States v. Dougherty,
    473 F.2d 1113 (D.C. Cir. 1972) . . . . . . . . . . . . . . . . . . 21

United States v. El-Mezain,
    664 F.3d 467 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . 18

United States v. Fernandez,
    839 F.2d 639 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . 11

United States v. Freeman,
    498 F.3d 893 (9th Cir. 2007) . . . . . . . . . . . . . . . . 18, 19

United States v. Gadson,
    763 F.3d 1189 (9th Cir. 2014) . . . . . . . . . . . . . . . . . .19

United States v. Gaudin,
    515 U.S. 506 (1995) . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Gorham,
    523 F.2d 1088 (D.C. Cir. 1975) . . . . . . . . . . . . . . . . . 21

United States v. Harrington,
    923 F.2d 1371 (9th Cir. 1991) . . . . . . . . . . . . . . . . . 23

United States v. Hedgcorth,
    873 F.2d 1307 (9th Cir. 1989) . . . . . . . . . . . . . . . . . 24

United States v. Jayyousi,
    657 F.3d 1085 (11th Cir. 2011) . . . . . . . . . . . . . . . . . 18

United States v. Jones,
    933 F.2d 807 (10th Cir. 1991) . . . . . . . . . . . . . . . . . 21

United States v. Kaiser,
    660 F.2d 724 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . 22

United States v. Matta-Ballesteros,
    71 F.3d 754 (9th Cir. 1995) . . . . . . . . . . . . . . . . .17, 23

United States v. McCollom,
    664 F.2d 56 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . 24

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

United States v. McDowell,
    918 F.2d 1004 (1st Cir. 1990) . . . . . . . . . . . . . . . . 12, 18

United States v. Miranda-Uriarte,
    649 F.2d 1345 (9th Cir. 1981) . . . . . . . . . . . . . . . . . 15

United States v. Oriyomi,
    449 F. App'x 681 (9th Cir. 2011) . . . . . . . . . . . . . . . 16

United States v. Ortega,
    203 F.3d 675 (9th Cir. 2000) . . . . . . . . . . . . . . . . . 12

United States v. Powell,
    955 F.2d 1206 (9th Cir. 1991) . . . . . . . . . . . . . . . . . 21

United States v. Robinson,
    967 F.2d 287 (9th Cir. 1992) . . . . . . . . . . . . . . . . . 23

United States v. Rollins,
    544 F.3d 820 (7th Cir. 2008) . . . . . . . . . . . . . . . 18, 19

United States v. Rrapi,
    175 F.3d 742 (9th Cir. 1999) . . . . . . . . . . . . . . . . . 17

United States v. Santana-Camacho,
    931 F.2d 966 (1st Cir. 1991) . . . . . . . . . . . . . . . . . 23

United States v. Simas,
    937 F.2d 459 (9th Cir. 1991) . . . . . . . . . . . . . . . . . 18

United States v. Smith,
    893 F.2d 1573 (9th Cir. 1990) . . . . . . . . . . . . . . . . . 19

United States v. Smith,
    918 F.2d 1551 (11th Cir. 1990) . . . . . . . . . . . . . . . . 12

United States v. Torres,
    908 F.2d 1417 (9th Cir. 1990) . . . . . . . . . . . . . . . . . 17

Zal v. Steppe,
    968 F.2d 924 (9th Cir. 1992) . . . . . . . . . . . . . . . . . 21

Statutes

18 U.S.C. §§ 2252A(a)(2)(A) . . . . . . . . . . . . . . . . . . . . . 2, 3
18 U.S.C. §§ 2252A(a)(5)(B) . . . . . . . . . . . . . . . . . . . . . . 2

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                          <u>PAGE</u>

Rules

Fed. R. Crim. P. 16(d)(2)..........................................20
Fed. R. Evid. 1003.................................................19
Fed. R. Evid. 405(a)...............................................24
Fed. R. Evid. 608(b)...............................................16
Fed. R. Evid. 702..................................................17
Fed. R. Evid. 801(d)(2)(A).........................................11
Fed. R. Evid. 801(d)(2)(B).........................................11
Fed. R. Evid. 803(6)...............................................19
Fed. R. Evid. 901(a)...............................................22
Fed. R. Evid. 901(b)(5)............................................17
Fed. R. Evid. 902(11)..............................................19
FRE 701............................................................17

1          <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2   **I.   STATUS OF THE CASE**

3          Jury trial is set for November 14, 2022, starting at 8:00 a.m.

4   for the attorneys.  The government estimates its case-in-chief is

5   approximately one court day.  With cross-examination and redirect,

6   the government estimates the trial will take two days.  Depending on

7   the length of jury selection, the trial could potentially last for

8   three days.  The government anticipates calling approximately three

9   witnesses (and the fourth if necessary):

10          (1) Homeland Security Investigations ("HSI") Special Agent Paul

11          Radlinski ("Agent Radlinski"),

12          (2) HSI Special Agent Troy Kennedy ("Agent Kennedy"),

13          (3) Ms. Lisette Martinez ("Ms. Martinez"), care worker at the De

14          Leon Country Maureen's Care Homes,

15          (4) HSI Special Agent Sharon Lee.

16   **II.  STATEMENT OF CHARGES**

17          Defendant CYR DINO BANGUGUILAN ("BANGUGUILAN"), defendant two,

18   is charged in Count 15 of the Second Superseding Indictment

19   ("Indictment") with Receipt of Child Pornography for receiving child

20   pornography from BANGUGUILAN's co-defendant, Steve Jackson Rodriguez

21   ("Rodriguez").[1]  The Indictment describes the file, which states that

22   it "depicted Rodriguez orally copulating Minor Victim 1, a minor

23   female."  BANGUGUILAN is charged in Count 17 with Possession of Child

24   Pornography for having possessed child pornography in a Telegram chat

25   with Rodriguez.  The Indictment describes the file "depicted the

26   penis of an adult male anally penetrating Minor Victim 1."

27   _____

28          [1] Rodriguez is defendant number 1 in the indictment and pled
    guilty and is pending sentencing.

Defendant MIGUEL BOCARDO ("BOCARDO"), defendant three, is charged in Count 13 with Receipt of Child Pornography for receiving child pornography on June 30, 2021. Those files included videos of Rodriguez forcing MV1 to orally copulate his penis, Rodriguez attempting to anally penetrate MV1 with his penis, and Rodriguez anally penetrating MV1 with his penis. BOCARDO is charged with Access with Intent to View Child Pornography for having attempted to view or actually viewing a file Rodriguez sent him. The file depicted MV1 being anally penetrated by an adult male's penis.

**III. ELEMENTS OF THE OFFENSES**

For a defendant to be guilty of Receipt of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A), (b)(1), the government must prove the below elements beyond a reasonable doubt:

(1) Defendant knowingly received matters which the defendant knew contained visual depictions of minors engaged in sexually explicit conduct;

(2) Defendant knew each visual depiction he received would contain in the matters showed minors engaged in sexually explicit conduct;

(3) Defendant knew that production of such visual depictions involved use of a minor in sexually explicit conduct; and

(4) Each visual depiction would have been mailed, or shipped/transported, using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, by any means, including by computer.

Ninth Circuit Model Criminal Jury Instruction No. 20.23 (2022 edition) (modified for statute).

For a defendant to be guilty of Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2), the government must prove the below elements beyond a reasonable doubt:

    (1)   Defendant knowingly possessed matters that defendant knew contained visual depictions of minors engaged in sexually explicit conduct;

    (2)   Defendant knew each of the visual depictions contained in the matters showed minors engaged in sexually explicit conduct;

    (3)   Defendant knew that production of such visual depictions involved use of a minor in sexually explicit conduct; and

    (4)   Each visual depiction had been either: (a) mailed/shipped/transported in interstate of foreign commerce, or (b) produced using material that had been mailed/shipped/transported in interstate or foreign commerce by computer or other means.

Ninth Circuit Model Criminal Jury Instruction No. 20.23 (2022).

For a defendant to be guilty of Access With Intent to View Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A), (b)(1), the government must prove the below elements beyond a reasonable doubt:

    (1)   Defendant knowingly accessed with intent to view matters that defendant knew contained visual depictions of a minor engaged in sexually explicit conduct;

    (2)   Defendant knew each of the visual depictions contained in the matters showed a minor engaged in sexually explicit conduct;

    (3)   Defendant knew that production of such visual depictions involved use of a minor in sexually explicit conduct; and

    (4)   Each visual depiction had been either: (a) mailed/shipped/transported in interstate of foreign commerce, or (b) produced using material that had been mailed/shipped/transported in interstate or foreign commerce by computer or other means.

Ninth Circuit Model Criminal Jury Instruction No. 20.23 (2022 edition) (modified for statute).

## IV.   SUMMARY OF FACTS

In 2021, Rodriguez was a Certified Nursing Assistant at a group home for severely mentally and physically handicapped children who

3

were being cared for by the Department of Child and Family Services ("DCFS") at the Group Home.

While employed there, Rodriguez repeatedly produced child pornography of himself raping multiple children.[2]  Rodriguez then repeatedly distributed some of this child pornography to both BANGUGUILAN and BOCARDO over the encrypted messaging application Telegram.  As described below, BANGUGUILAN and BOCARDO were active participants in the chats with Rodriguez, and initially requested such images.

### A.   BANGUGUILAN receives child pornography from Rodriguez, responding affirmatively to the files multiple times

BANGUGUILAN admitted he received and possessed child pornography.  Specifically, when showed screenshots taken from Rodriguez's phone of a Telegram chat with "Cyr," (the chat where defendant received the child pornography charged here) defendant admitted he was "Cyr" and he had been the person chatting with Rodriguez in that chat.

BANGUGUILAN admitted he had viewed about 10-20 videos of Rodriguez sexually abusing Minor Victim 1 ("MV1") received from Rodriguez in this chat.  Minor Victim 1 is a female who suffers from both severe mental and physical disabilities, and was located at this group home for such children who were being cared for by the government.  MV1 wore a colostomy bag and was non-verbal.  When asked, both BANGUGUILAN and BOCARDO admitted that they knew MV1 was non-verbal because she had mental disabilities.  At the time of the charged conduct, MV1 was under 10 years old.

---

[2] Among other crimes charged in the indictment that are not relevant to the charges against BANGUGUILAN and BOCARDO.

4

1      BANGUGUILAN admitted he asked Rodriguez for videos.  In

2  approximately April 2021 BANGUGUILAN requested that Rodriguez, "Send

3  me boys too if you have 😳."  After viewing a video of Rodriguez

4  sexually assaulting MV1, defendant stated, "Nice. I saw the girl with

5  your cock."  When Rodriguez responded, he had "lots," which

6  BANGUGUILAN understood to mean Rodriguez had many videos of him

7  sexually abusing MV1.  BANGUGUILAN responded, "You wanna send it to

8  me now or later?"

9      BANGUGUILAN also admitted he knew MV1 was a real disabled non-

10  verbal child in Rodriguez's care who Rodriguez sexually abused.

11      BANGUGUILAN's admissions were corroborated by the Telegram chat

12  between him and Rodriguez.  On August 24, 2021, Rodriguez began

13  sending BANGUGUILAN pornography.  BANGUGUILAN's responses were "Oh I

14  was hoping your dick" "that's not the photo I want to see lol[3]" "I

15  love looking at cocks lol."  Rodriguez then proceeded to send

16  BANGUGUILAN gif of what appeared to be a toddler thrusting his penis

17  into a grown woman's mouth, to which BANGUGUILAN replied "Lol."  Then

18  Rodriguez said "U like" and BANGUGUILAN responded with a zipper mouth

19  and "I don't actually lol."  After receiving a non-CSAM image of MV1

20  (which based on further investigation appears to be a still shot

21  taken from a video of Rodriguez anally raping her), BANGUGUILAN

22  stated "Nah forreal[sic].  I think i was jntrigued [sic] by it at

23  first but nah it's too young."  Then, at around 7:08 a.m. over

24  Telegram, Rodriguez sent defendant an image of an adult male's penis

25  (which appears to be Rodriguez's) anally penetrating MV1 with the

26  caption, "I put it in her butt" followed by two emoticons of water

27

28
_____

[3] Lol is common internet slang for "laugh out loud."

5

drops and a third emoticon of fire.  BANGUGUILAN responded, "cool."
Thus, it appears that Rodriguez gave BANGUGUILAN exactly what he
asked for a picture of Rodriguez's dick.

Given that BANGUGUILAN had asked Rodriguez for more child
pornography just a few months prior, in April, asked for certain
types of child pornography (namely depicting penises), and even that
same day asked for pictures of Rodriguez's penis, this child
pornography (which depicted Rodriguez's penis) was at least invited
by BANGUGUILAN.  Regardless of BANGUGUILAN's expression that the
toddler pornography was "too young" he acknowledged in both his
confession and in the chats that he knew the child pornography
depicting MV1 was in fact a real child, and that he possessed and
received it.  A grand jury charged BANGUGUILAN with Possession of
Child Pornography for this conduct in Count 17 of the Indictment.

Specifically, the Indictment charged that defendant had
"knowingly possessed a Telegram account that contained at least one
image of child pornography . . ..  The child pornography that
defendant BANGUGUILAN possessed in his Telegram application account
consisted of an image file received from via the Telegram application
from Steve Jackson Rodriguez, on or about August 24, 2021, at
approximately 7:08 a.m., which defendant BANGUGUILAN viewed on or
before August 24, 2021, at 7:17 a.m., and which depicted the penis of
an adult male anally penetrating Minor Victim 1."  (United States v.
Rodriguez, et al., CR 21-188(B)-JWH ("Dkt.") at 51, p. 17.)

After receiving this horrific image, BANGUGUILAN did not block
Rodriguez.  Instead, BANGUGUILAN told Rodriguez the image was "Cool."

A few hours later that same day, at around 1:20 p.m., Rodriguez
sent BANGUGUILAN additional child pornography of MV1.  Rodriguez sent

at least 5 additional images of MV1.  Two of the photos were of MV1's face and the other three images depicted Rodriguez orally copulating MV1's vagina where Rodriguez's face was visible.  BANGUGUILAN responded, "gross lol."  A grand jury charged defendant with Receipt of Child Pornography for this conduct in Count 15 in the Indictment.

The indictment charged that BANGUGUILAN had "knowingly received an image of child pornography. . . .  The child pornography BANGUGUILAN received on or about August 24, 2021 consisted of three images sent via the Telegram application at or around 1:20 p.m., from Rodriguez, that depicted Rodriguez orally copulating Minor Victim 1, a minor female."  (Id. at p. 19.)

In the "deleted" space on BANGUGUILAN's cellphone, Agent Kennedy was able to use forensic software to "carve" some of the above-described images.  Agent Kennedy also found other child pornography and erotica, including of a prepubescent male being orally copulated and anally digitally penetrated by an adult female and Rodriguez slapping MV1's buttocks.  The government intends to introduce testimony about some of these images and videos at trial.  As stated in the pre-trial conference we do not intend to show CSAM images that were not charged and/or correspond to stills of the changed conduct.  However we may need to show these carved images/videos if defense challenges the agent's descriptions on what is depicted to rehabilitate the agent's credibility and let the jury make their own determination about the contents of these files.

## B.   BOCARDO received child pornography from Rodriguez

In a different chat over Telegram, Rodriguez chatted about and sent child exploitation material to BOCARDO.

1    In May 2021, BOCARDO messaged Rodriguez he was "horney [sic]"
2  and Rodriguez responded, "jack off[4] to this."  Rodriguez sent BOCARDO
3  an unknown file and said, "you should do that to the 8 year old.[5]"
4  Co-defendant responded, "we[']ll see was up."  "Crazy."  Rodriguez
5  replied, "yup lick that shot. Shit" and BOCARDO replied, "lol."
6  Rodriguez then offered, "Or do u want a blowjob from her?"  Co-
7  defendant responded, "Helll [sic] yea."

8    On June 30, 2021, Rodriguez messaged BOCARDO, "wana [sic]
9  see[?]"  Co-defendant agreed, "Fs [for sure] Yea . . . ."  Rodriguez
10 then sent a file to which BOCARDO replied, "big deep trought
11 [throat]"  Rodriguez confirmed, "Big time Crazy little girl huh."  A
12 grand jury charged BOCARDO with Receipt of child pornography in Count
13 13 for his receipt of child pornography on this day.

14    BOCARDO continued encouraging Rodriguez "yup Hell yea stick it
15 in."  Rodriguez confirmed, "In her ass" to which BOCARDO countered,
16 "Can't fit."  Rodriguez replied, "ya it did but not in that video" to
17 which BOCARDO asked, "oh let [sic] see."  Rodriguez complied and sent
18 another file.  BOCARDO confirmed receipt by replying to the content
19 of the file in saying, "Dam [sic] straight deep inside."  In the same
20 conversation Rodriguez offered to BOCARDO, "U can do that to the 8
21 year old and I'll record it.  It can fit in the 8 year old."  BOCARDO
22 confirmed, "Yea tru [sic] well see thoe [sic] I want a milf."

23    On August 24, 2021, the day before BOCARDO was arrested, he
24 messaged Rodriguez.  Rodriguez sent a file with the caption, "8 year
25 old who gave me head."  BOCARDO responded, "Nice We're [sic] the

26
27    [4] "Jack off" is a slang term for masturbation.
28    [5] MV1 was 8 years' old at the time of much of the child
   pornography defendant produced of MV1.

8

milfs at."  Rodriguez replied, "Yes I was putting it in her ass.  Idk [I don't know] lol [laugh out loud] more into kids" and co-defendant undeterred, "oh fs [for sure]."  A grand jury charged co-defendant for Access With Intent to View for this conduct in Count 18.

When interviewed, BOCARDO admitted Rodriguez told him Rodriguez worked in a facility and when no one else was working, Rodriguez "fucks kids."  BOCARDO admitted Rodriguez sent about 10-20 files of child pornography to him over Telegram.  Specifically, BOCARDO admitted Rodriguez sent him videos of Rodriguez "doing oral" with a "kid" and that he could see Rodriguez's face in the video.  This matches files of MV1 that RODRIGUEZ sent to BANGUGUILAN, and what we found in RODRIGUEZ's possession.  He described the child as being "autistic" and indicated she was unable to speak.

## V.   LEGAL AND EVIDENTIARY ISSUES

### A.   Motions *In Limine*

#### 1.   The Charged Child Pornography Can Offered And, If Admitted, Published to the Jury

After briefing and oral argument, this Court permitted the government to seek to admit the child pornography charged in the Indictment.  (Dkt. 119.)

At the final pretrial conference, on August 4, 2022, the government informed the Court it would likely elicit testimony from Agent Radlinski about the evidence discovered on BANGUGUILAN's cellphone, including less than five other child pornography and child erotica files in defendant's deleted space.  Those videos included a video from the Telegram database of Rodriguez slapping MV1's buttocks and video of an adult female orally and anally molesting a prepubescent boy.  These videos are essential context to the language

1  in the chats between Rodriguez and BANGUGUILAN; they also rebut any

2  defense that defendant did not know what Rodriguez was sending, and

3  would send in the future, and did not "knowingly" receive child

4  pornography.

5       As the government also indicated at the final pretrial

6  conference, the government will not seek to admit or publish theses

7  files unless defendants open the door during their cross examination

8  of Agent Radlinski by attacking Agent Radlinski's credibility or

9  attaching the agent's description of what these files depict.  That

10 is, if defendants attempt to draw doubt about Agent Radlinski's

11 account of the files, the government will seek to show the files to

12 corroborate Agent Radlinski's testimony thereby rehabilitating him,

13 and allowing the jury to draw their own conclusions about the

14 veracity of the agent's testimony.

15       2.   BANGUGUILAN and BOCARDO's Chats Can Be Offered

16       After briefing and oral argument, this Court permitted the

17 government to seek to admit the chats between Rodriguez and

18 defendants.  (Dkt. 119.)

19       These chats are direct evidence of the charged counts and

20 provide relevant context for the receipt and possession/access counts

21 because they explain how, when, and why Rodriguez sent defendants the

22 files.

23       As described further below, these statements are not hearsay and

24 Rodriguez's statements as admissible to provide context.

25       3.   BANGUGUILAN (And BOCARDO's) Statements Can Be Offered

26       After briefing and oral argument, this Court permitted the

27 government to seek to admit BANGUGUILAN's post-arrest interview

28

statements.  (Dkt. 119.)  Defendant BOCARDO did not move to exclude his statements.

As described further below, these statements are not hearsay when offered by the government.

### 4.   Agent Kennedy Can Offer Expert Testimony

After briefing and oral argument, this Court permitted the government to seek to admit the expert testimony of Agent Kennedy. (Dkt. 119.)

Agent Kennedy will lay the foundation necessary to establish how digital data in this case was reliable captured and queried.  Agent Kennedy will also describe how data can be retrieved from deleted space in a digital device.

**B.   Hearsay**

### 1.   The Government May Introduce Defendants' Statements

The government intends to introduce defendants' recorded statements to HSI Special Agents.

A defendant's out-of-court statement is admissible if offered against him by the government.  See Fed. R. Evid. 801(d)(2)(A); United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).

An out-of-court statement offered against the defendant is also not hearsay if the defendant "manifested an adoption or belief in its truth . . . ."  Fed. R. Evid. 801(d)(2)(B).  We informed the Court and defense counsel in both the course of the suppression litigation, and the pre-trial conferences, and the exhibit lists that we intend to introduce these statements, and clips of these statements.  The full statements were provided to defense counsel shortly after the statements were made to the government.  The government provided the specific clips to defense counsel on November 7, 2022.

2.   **The Government May Introduce Statements of Persons in Conversation with the Defendant**

The government also intends to introduce statements of the agents interviewing defendants for context.  Such statements not offered for their truth, but to provide context for what the defendant said or did, and thus, are not hearsay.  <u>United States v. Smith</u>, 918 F.2d 1551, 1559 (11th Cir. 1990); <u>United States v. McDowell</u>, 918 F.2d 1004, 1007-08 (1st Cir. 1990).  This makes sense, as often a defendant's "yes" or "no" answer would be indecipherable to a jury without the question that prompted such a question.

3.   **Defendants May Not Introduce Their Own Recorded Statements**

A defendant cannot elicit or introduce evidence of his own prior statements, either on direct examination of his own witness, or cross-examination of the government's witness, because those statements are inadmissible hearsay.  <u>See e.g.</u>, <u>United States v. Ortega</u>, 203 F.3d 675, 682 (9th Cir. 2000); <u>United States v. Lim</u>, 984 F.2d 331, 336 (9th Cir. 1993)("[Defendant's] own statement was admissible as a party-opponent admission under Fed. R. Evid. 801(d)(2)(A)).

Indeed, even where the government elicits the inculpatory portion of a defendant's statement from a witness, on cross-examination, the defendant is not entitled to elicit any purportedly exculpatory portion of the defendant's own statement.  <u>See</u> <u>Ortega</u> at 682 ("self-inculpatory statements, when offered by the government, are admissions by a party opponent and are therefore not hearsay," but when offered by defendant himself, "non-self-inculpatory statements are inadmissible hearsay").  To permit otherwise would place a defendant's statements "before the jury without subjecting

himself to cross examination, precisely what the hearsay rule forbids." Ortega, 203 F.3d at 682 (district court properly granted the government's motion in limine to exclude introducing defendant's post-arrest statements through cross examination of INS agent) (quoting United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988)); United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999) (defendant cannot introduce exculpatory statement without subjecting himself to cross examination).

> 4. **Rule of Completeness Does Not Permit Defendant to Admit Additional Statements where Government Clips Do Not Create Distortions**

Defendant may argue that Rule 106 ("Rule of Completeness") allows defendant to admit additional portions of their recorded statements to "complete" the recordings. However this would be a gross mis-read of the law.

The Ninth Circuit has been clear, Rule 106 only "exists to avert 'misunderstanding or distortion' caused by introduction of only part of a document." United States v. Vallejos, 742 F.3d 902, 905 (9th Cir. 2014) (quoting Beech Aircraft Corp. v. Rainey, 488 U.S. 153 (1988)). This does not mean defendant is permitted to add additional recordings from the same conversation simply because the recording also contains non-inculpatory statements or furthers a defendant's narrative. See United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996), as amended (Oct. 21, 1996).

To determine whether the Rule of Completeness applies, the Court must determine whether the government's proffered statements create a "misunderstanding" or "distortion" about its contents. Vallejos, 742 F.3d at 905. To be supplemented using this rule, the statements must have created a "misleading impression" because the edited version

"distorted the meaning of the statement." <u>Collicott</u>, 92 F.3d at 983;
<u>see also United States v. Dorrell</u>, 758 F.2d 427, 434-35 (9th Cir.
1985) (finding no Rule of Completeness violation where the edited
version of a confession did not "distort[ ] the meaning of the
statement") (internal quotation marks omitted).  Here there is no
such distortion.

Where the government introduces statements by a party opponent
pursuant to 801(d)(2), it is proper to exclude non-self-inculpatory
statements offered by defendant under Rule 106.  <u>Meraz</u>, 663 F. App'x
at 581; <u>Ortega</u>, 203 F.3d at 682.

Here the government's recording clips do not create any
distortion of facts.  Where the recording excerpt does not create
such a distortion, "it is often perfectly proper to admit segments of
prior testimony without including everything . . ."  <u>Collicott</u>, 92
F.3d at 983 (internal quotation marks omitted).

5.   <u>Request for Sidebar Prior to Cross Examination of
     Special Agent Radlinski about Defendants' Statements</u>

Defense counsel Humberto Diaz acknowledged at the final pre-
trial conference that defendants are typically barred from
introducing their own statements by the Rule Against Hearsay.
Nevertheless, defense counsel alluded at the conference, that they
may attempt to introduce portions of recorded statements anyway.  The
government anticipates they will likely attempt to do so by simply
asking the agent questions about other portions of the interviews and
eliciting a hearsay objection from the government which will be
sustained as discussed above.  This series of events will be
inefficient, will present to the jury the appearance that the

14

1    government is "preventing the jury from hearing defense's case," when
2    in fact the government is merely enforcing the Rules of Evidence.

3        Thus, the government requests a sidebar and a proffer before
4    cross examination of SA Radlinski before defense counsel attempts to
5    introduce any additional statements by the defendants through Special
6    Agent Radlinski.  That will allow the government, defense, and the
7    Court to fully flesh out whether there are any admissible portions of
8    the recorded statements subject to some rule of evidence that
9    defendant can ask about, without eliciting a series of sustained
10   hearsay objections from the government.

### C.    Cross-Examination of Defendants

12       A defendant who testifies at trial waives his right against
13   self-incrimination and subjects himself to cross-examination
14   concerning all matters reasonably related to the subject matter of
15   his testimony.  See, e.g., Ohler v. United States, 529 U.S. 753, 759
16   (2000) (citing McGautha v. California, 402 U.S. 183, 215 (1971),
17   vacated in part on other grounds, Crampton v. Ohio, 408 U.S. 941
18   (1972) ("It has long been held that a defendant who takes the stand
19   in his own behalf cannot then claim the privilege against cross-
20   examination on matters reasonably related to the subject matter of
21   his direct examination")).  A defendant has no right to avoid cross-
22   examination on matters that call into question her claim of
23   innocence.  United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54
24   (9th Cir. 1981).  The scope of a defendant's waiver is coextensive
25   with the scope of relevant cross-examination.  United States v.
26   Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992); United States v. Black,
27   767 F.2d 1334, 1341 (9th Cir. 1985) ("What the defendant actually
28   discusses on direct does not determine the extent of permissible

1  cross-examination or his waiver.  Rather, the inquiry is whether 'the

2  government's questions are reasonably related' to the subjects

3  covered by the defendant's testimony.").

4         1.   Impeachment of Defendant with False Statements

5         A witness's false statements may "on cross-examination, . . . be

6  inquired into if they are probative of the character for truthfulness

7  or untruthfulness" of the witness. Fed. R. Evid. 608(b); United

8  States v. Oriyomi, 449 F. App'x 681, 682 (9th Cir. 2011) ("Under

9  [Rule 608(b)], prosecutors may cross-examine witnesses about

10  documents so long as they do not enter the documents as extrinsic

11  evidence.").

12         As set forth above, the government intends to introduce in its

13  case-in-chief evidence of defendants' statements to HSI Special

14  Agents.

15         If the defendants take the stand, the government intends to

16  impeach defendants with these statements.  The statements are

17  contradicted by their chat with Rodriguez and their

18  receipt/possession/access of child pornography.  Since defendants'

19  false exculpatory statements are highly probative of their character

20  for truthfulness, they are proper grounds for cross-examination under

21  608(b).

22     **D.   Audio and Video Recordings**

23         All duly admitted recorded conversations must be played in open

24  court.  The foundation that must be laid for the introduction into

25  evidence of recorded conversations is a matter largely within the

26  discretion of the trial court.  There is no rigid set of foundational

27  requirements.  Rather, the Ninth Circuit has held that recordings are

28  sufficiently authenticated under Federal Rule of Evidence 901(a) if

sufficient proof has been introduced "so that a reasonable juror could find in favor of authenticity or identification," which can be done by "proving a connection between the evidence and the party against whom the evidence is admitted" and can be done by both direct and circumstantial evidence.  United States v. Matta-Ballesteros, 71 F.3d 754, 768 (9th Cir. 1995), modified by 98 F.3d 1100 (9th Cir. 1996).

Witnesses may testify competently as to the identification of a voice on a recording.  A witness's opinion testimony in this regard may be based upon his having heard the voice on another occasion under circumstances connecting it with the alleged speaker.  Fed. R. Evid. 901(b)(5); United States v. Torres, 908 F.2d 1417, 1425 (9th Cir. 1990) ("Testimony of voice recognition constitutes sufficient authentication.").  Here, the government expects that Agent Radlinski authenticate the voices heard and persons seen on the recordings because he was present during the interviews.

Recorded conversations are competent evidence even when they are partly inaudible, unless the unintelligible portions are so unsubstantial as to render the recording as a whole untrustworthy. United States v. Rrapi, 175 F.3d 742, 746 (9th Cir. 1999).

**E.   Case Agent's Testimony About the Audio And Video Recordings**

Such testimony, where based on the law enforcement witnesses' personal observations and direct knowledge of the investigation, falls under FRE 701 and does not qualify as expert testimony governed by FRE 702.

In applying Rule 701 to the lay opinion testimony of law enforcement officers, we have held that an officer's interpretation of intercepted phone calls may meet Rule 701's "perception"

17

requirement when it is an interpretation "of ambiguous conversations based upon [the officer's] direct knowledge of the investigation." United States v. Freeman, 498 F.3d 893, 904-05 (9th Cir. 2007); see also United States v. Simas, 937 F.2d 459, 464-65 (9th Cir. 1991) (finding no abuse of discretion in admitting officers' lay testimony "concerning their understanding of what [defendant] meant to convey by his vague and ambiguous statements").

The Court went on:

> In Kevin Freeman, for instance, we held that once the government established a foundation, a police officer could provide lay witness opinion testimony regarding the meaning of statements in the defendant's intercepted phone calls because the testimony was based on the officer's "direct perception of several hours of intercepted conversations—in some instances coupled with direct observation of [the defendants]—and other facts he learned during the investigation.

Freeman, 498 F.3d at 904-05; see also United States v. El-Mezain, 664 F.3d 467, 513-14 (5th Cir. 2011) (allowing lay opinion testimony interpreting telephone calls when "the agents' opinions were limited to their personal perceptions from their investigation of this case"); United States v. Rollins, 544 F.3d 820, 830-33 (7th Cir. 2008) (finding no error in the district court's decision to allow the agent's testimony regarding his "impressions" of recorded conversations when the testimony was "based on the agent's perceptions derived from the investigation of this particular conspiracy"). (Id. at 1207-08.)

Such testimony is admissible even if the testifying officer was not a participant in the recorded conversation. Kevin Freeman, 498 F.3d at 904; see also United States v. Jayyousi, 657 F.3d 1085, 1102 (11th Cir. 2011) (holding that a lay witness's testimony was

18

admissible even though "he did not personally observe or participate in the defendants' conversations").

Lay witness testimony regarding the meaning of ambiguous conversations based on the witness's direct perceptions and experience may also prove "helpful to the jury" for purposes of Rule 701.  See Kevin Freeman, 498 F.3d at 904-05 (agent's "understanding of ambiguous phrases" based on the "direct perception of several hours of intercepted conversations" along with "direct observation" of defendants and "other facts he learned during the investigation" resulted in testimony that "proved helpful to the jury in determining what the [co-conspirators] were communicating during the recorded telephone calls"); see also Rollins, 544 F.3d at 832-33 (agent's testimony based on listening to every intercepted conversation, and other "personal observations and perceptions" related to the specific case at issue "assisted the jury in determining several facts in issue").  United States v. Gadson, 763 F.3d 1189, 1207 (9th Cir. 2014).

## F.   Business Records and Public Records

The government will seek to introduce business records in the form of certified copies of business records, which do not require extrinsic evidence of authenticity as a condition precedent to admissibility.  Fed. R. Evid. 902(11).  Such records are self-authenticating, Fed. R. Evid. 902(11), and not hearsay, Fed. R. Evid. 803(6).  A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) under the circumstances, it would be unfair to admit the duplicate instead of the original.  Fed. R. Evid. 1003; see also United States v. Smith, 893 F.2d 1573, 1579 (9th Cir. 1990)

1

### G.   Reciprocal Discovery

2       The government has complied with its discovery obligations under

3  Rule 16 of the Federal Rules of Criminal Procedure, and continues to

4  do so.  The government has likewise requested all reciprocal

5  discovery from defendants on multiple occasions in writing, most

6  recently on November 7, 2022.  To date, the government has received

7  no discovery from the defendants; nor have defendants voiced an

8  objection to the government's requests.

9       Pursuant to Rule 16(b)(1)(A), a defendant should be precluded

10  from introducing any documents that were not produced, in violation

11  of defendant's reciprocal discovery obligations. Fed. R. Crim. P.

12  16(d)(2) ("the court may . . . prohibit the party from introducing

13  evidence not disclosed"); see also Taylor v. Illinois, 484 U.S. 400,

14  415 (1988) (defendant's failure to comply with, or object to,

15  government's discovery request before trial justified exclusion of

16  unproduced evidence).

17       Defendants also have not yet provided the government with any

18  information regarding witnesses that defendant intends to call.  To

19  eliminate the need for the government to request a brief recess after

20  the direct testimony of any of the defense witnesses, the government

21  requests that the Court require defendant to provide any information

22  necessary to collect potential impeachment material, including the

23  full name and birthdate of any witnesses (for purposes of conducting

24  a criminal history inquiry) at the outset of the defense case. The

25  government must be permitted to obtain criminal history information

26  for those witnesses and evaluate any impeachment material provided in

27  order to properly cross examine those witnesses, and the government

28  does not wish to delay the trial and waste the jurors' time by

1    requesting a recess following the direct testimony of each of those

2    witnesses.

3        **H.    Jury Nullification**

4        A jury may "bring in a verdict in the teeth of both law and

5    facts." <u>Horning v. District of Columbia</u>, 254 U.S. 135, 138 (1920),

6    not followed on other grounds, <u>United States v. Gaudin</u>, 515 U.S. 506,

7    520 (1995); <u>United States v. Dougherty</u>, 473 F.2d 1113, 1133 (D.C.

8    Cir. 1972).  Recognition of that power, however, does not countenance

9    admission of evidence or argument supporting jury nullification.  <u>See</u>

10   <u>United States v. Powell</u>, 955 F.2d 1206, 1213 (9th Cir. 1991).

11       A defendant is not entitled to present evidence or argument

12   solely to promote jury nullification.  "[N]either a defendant nor his

13   attorney has a right to present to a jury evidence that is irrelevant

14   to a legal defense to, or an element of, the crime charged. Verdicts

15   must be based on the law and the evidence, not on jury nullification

16   as urged by either litigant."  <u>Zal v. Steppe</u>, 968 F.2d 924, 930 (9th

17   Cir. 1992) (concurring opinion); <u>see also</u> <u>United States v. Gorham</u>,

18   523 F.2d 1088, 1097-98 (D.C. Cir. 1975).  Unless specifically

19   authorized by statute, juries must reach their verdicts "without

20   regard to what sentence might be imposed."  <u>Roaers v. United States</u>,

21   422 U.S. 35, 40 (1975).  As a result, "it is improper to inform the

22   jury of the defendant's possible punishment."  <u>United States v.</u>

23   <u>Jones</u>, 933 F.2d 807, 811 (10th Cir. 1991).

24       Here, the parties have already alluded to their jury

25   nullification argument, that they did not want to desire to receive

26   additional child pornography.  However, the defendants' desire is not

27   an element of the charged crimes, therefore, this argument should be

28   excluded in its entirety.

1        **I.    Parties' Potential Stipulation to Interstate Nexus**

2        Defendants both indicated they would sign a stipulation to the

3   element of interstate nexus in all four charged counts.  To date,

4   they have not returned a signed stipulation.  If they do, that

5   evidence will be read into the record as if testimony had established

6   the stipulated-to facts.

7        **J.    Authentication, Identification, and Chain of Custody**

8        Fed. R. Evid. 901(a) provides that "the requirement of

9   authentication or identification as a condition precedent to

10  admissibility is satisfied by evidence sufficient to support a

11  finding that the matter in question is what its proponent claims."

12  Rule 901(a) only requires the government to make a prima facie

13  showing of authenticity or identification "so that a reasonable juror

14  could find in favor of authenticity or identification."  United

15  States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991); United

16  States v. Blackwood, 878 F.2d 1200, 1202 (9th Cir. 1989); United

17  States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985).  Once the

18  government meets this burden, "the credibility or probative orce of

19  the evidence offered is, ultimately, an issue for the jury."  Black,

20  767 F.2d at 1342.

21       The government will seek to admit chats that were captured from

22  Rodriguez's phone.  In establishing chain of custody as to an item of

23  physical evidence, the government is not required to call all persons

24  who may have come into contact with the piece of evidence.  Reyes v.

25  United States, 383 F.2d 734 (9th Cir. 1967); Gallego v. United

26  States, 276 F.2d 914, 917 (9th Cir. 1960).  Moreover, a presumption

27  of regularity exists in the handling of exhibits by public officials.

28  United States v. Kaiser, 660 F.2d 724, 733 (9th Cir. 1981); United

1   States v. De Bright, 730 F.2d 1255, 1259 (9th Cir. 1984) (en banc);

2   United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991).

3   Gaps or defects in chain of custody go to the weight of the evidence

4   rather than its admissibility.  United States v. Matta-Ballesteros,

5   71 F.3d 754, 769-70 (9th Cir. 1995); United States v. Robinson, 967

6   F.2d 287, 292 (9th Cir. 1992).

7       **K.**    **Character Evidence**

8       The Supreme Court has recognized that character evidence --

9   particularly cumulative character evidence -- has weak probative

10  value and great potential to result in confusion of the issues and

11  prejudice the jury.  Michelson v. United States, 335 U.S. 469, 480,

12  486 (1948).  The Court has thus given trial courts wide discretion to

13  limit the presentation of character evidence.  Id. at 486.  Federal

14  Rule of Evidence 403 also "gives the district court broad discretion

15  in excluding cumulative evidence."  See Hamling v. United States, 418

16  U.S. 87, 127 (1974).

17      Rule 404(a) of the Federal Rules of Evidence governs the

18  admissibility of character evidence.  Rule 404(a) permits a defendant

19  to introduce evidence only of a "pertinent" trait of character.  A

20  non-pertinent or misleading character trait is not admissible.  For

21  instance, evidence of defendant's family status is similarly

22  irrelevant to whether defendant is believable and law-abiding, and is

23  thus inadmissible.  See United States v. Santana-Camacho, 931 F.2d

24  966, 967-68 (1st Cir. 1991) (testimony of defendant's daughter

25  purportedly showing that defendant was a good family man was

26  inadmissible character evidence inasmuch as such character traits

27  were not pertinent to charged crime of illegally bringing aliens into

28  the United States).

1    As a general rule, character witnesses called by defendant may
2  not testify about specific acts demonstrating a particular trait or
3  other information acquired only by personal observation and
4  interaction with the defendant; the witness must summarize the
5  reputation or opinion of the defendant as known in the community.
6  Fed. R. Evid. 405(a); Michelson, 335 U.S. at 477; United States v.
7  Hedgcorth, 873 F.2d 1307, 1313 (9th Cir. 1989).  On cross-examination
8  of a defendant's character witness, however, the government may
9  inquire into specific instances of defendant's past conduct relevant
10 to the character trait at issue.  Fed. R. Evid. 405(a).  In
11 particular, a defendant's character witnesses may be cross-examined
12 about their knowledge of the defendant's past crimes, wrongful acts,
13 and arrests.  Michelson, 335 U.S. at 479, 481 n.18.  The only
14 prerequisites are that: (1) there be a good faith basis that the
15 incidents inquired about occurred; and (2) the incidents are relevant
16 to the character trait at issue.  United States v. McCollom, 664 F.2d
17 56, 58 (5th Cir. 1981); United States v. Bright, 588 F.2d 504, 512
18 (5th Cir. 1979).

19 **VI.   CONCLUSION**

20    The government respectfully requests leave to file such
21 supplemental memoranda as may become necessary during trial.

22
23
24
25
26
27
28